UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JULIAN PERALTA, CLIFFORD BOYD,
ALLAH-SUN GRIFFITH, ISMAEL MONES,
ROBERT GALICIA, FELIPE REYES,
and SALVADOR HARRERO, *individually
and on behalf of all other persons similarly
situated*,

                        Plaintiffs,                  **REPORT & RECOMMENDATION**

      -against-

                                                 09-CV-0953 (SLT)(RER)

ALLIED CONTRACTING II CORP.,
MINELLI CONSTRUCTION CO., INC.,
GEORGE KYRIAK, and JOHN DOES# 1-10,

                        Defendants.
--------------------------------------------------------X

**RAMON E. REYES, JR., U.S.M.J.:**

      Before me is a motion to approve the settlement between plaintiffs and Allied Contracting II Corporation and George Kyriak (collectively, "Allied"). The Honorable Nicholas G. Garaufis referred for the motion to me for report and recommendation on July 11, 2011. Plaintiffs sued Allied for wage and hour violations pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law. Allied employed plaintiffs as roofers, laborers, and workmen. Plaintiffs claim they worked overtime almost daily, yet never received time and a half for overtime hours, they sometimes worked an additional day of the week and received no compensation, and they worked on city projects but were not paid prevailing wages as required.[1] Under the settlement agreement, Allied will pay a total of $175,000, with each individual plaintiff receiving between $3,010 and $27,950. The two firms representing plaintiffs will

---

[1] Plaintiffs initially sought to certify a class, but the motion was voluntarily withdrawn prior to decision. Minelli Construction Company, Inc. ("Minelli") was also sued, but plaintiffs voluntarily withdrew their claims against Minelli as well. Minelli remained as a cross-claimant and cross-defendant against Allied.

receive $30,095 each in attorneys' fees.

Initially, Minelli objected to the settlement on grounds that no provision of the settlement accounted for 23 non-parties, listed by the United States Department of Labor ("DOL") as employees of Allied with wage and hour claims during the relevant period. Minelli argued that since Allied's financial situation was "precarious," approval of settlement of the FLSA claims of 7 workers to the detriment of 23 would not be in the public interest.[2] Minelli, however, has since withdrawn its objection in light of the fact that a provision of the settlement agreement requires Allied to remit payment to DOL for the 23 workers, and Allied has done so.

The Court, therefore, has only to consider "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. Sita Information Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). In the absence of certified class FLSA claims, courts consider the: (1) complexity, expense, and likely duration of litigation, (2) stage of the proceedings, (3) risks of establishing liability, (4) risks of establishing damages, (5) ability of defendants to withstand a larger judgment, and (6) reasonableness is light of best possible recovery and all risks of litigation. *Misiewicz v. D'Onofrio General Contractors Corp.*, No. 08-

---

[2] As the settling parties noted, however, the reason settlements in FLSA cases require court approval is to ensure that the workers were not victims of inequitable bargaining power during negotiations. Therefore, the settling parties argued, Minelli's basis for objection was inappropriate. Although the case law clearly does indicate that the courts examine FLSA settlements to ensure that the settling employees were fairly treated, I am not certain that it would be out of the court's power to consider other employees who are not parties to the case, but are named in a DOL investigation, and whether the settlement would detrimentally affect their rights. But as the objection is withdrawn, it is not for me or Judge Garaufis to decide at this time.

CV-4377, 2010 WL 2545439, at * 4 (E.D.N.Y. May 17, 2010), *adopted by* 2010 WL 2545472 (analyzing individual FLSA claims using the factors examined in an FLSA class action, except those factors that apply only to a class). I have reviewed the settlement papers provided by counsel, in addition to declarations submitted by certain plaintiffs in connection with the earlier class certification motion that detail the overtime hours they worked, length of their employment, and their wages.

This settlement was the result of "arm's length negotiations, which were undertaken in good faith by counsel." *Reyes v. Buddha-Bar NYC*, No. 08-CV-2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009). Moreover, taking into consideration the alleged unpaid hours and evidence proffered by plaintiffs so far, these amounts are reasonable. For example, Julian Peralta ("Peralta") submitted a sworn declaration with the motion to certify the class indicating that he worked for Allied from January 2007 through May 2008, and was paid $17-22.50 per hour. (Dkt. No. 38-4, ¶¶ 2-3.) He further claimed that he often worked two hours of overtime a day, and occasionally worked an extra day for which we was not compensated at all. (*Id.* at ¶¶ 3-4.) Assuming he worked 10 hours of overtime every week for which he did not receive time and a half, and one day a month for which he did not get paid at all, his lost wages would be in the neighborhood of $15,000. Peralta worked for Allied longer than the other plaintiffs from whom the court received similar affidavits, and naturally is receiving a higher total amount of the settlement. It is, of course, not clear exactly what hours each plaintiff would be able to establish at trial, but based on my rough estimates, the settlement amounts appear reasonable in light of the record.

In addition, the risks of continued litigation are great. Again, using Peralta's affidavit as

an example, Peralta acknowledged signing in at 7:00 a.m. and out at 3:00 p.m. 5 days per week, though he contends he signed out at 3:00 p.m. even when he worked until 5:00 p.m. (*Id.* at ¶ 3.) At trial, the jury would have to weigh plaintiffs' assertions that they usually worked until 5:00 p.m., and sometimes worked a full day without pay against documents signed by each plaintiff stating otherwise. This is not to say that a jury could not find for plaintiffs, rather just to note that the relative strength of plaintiffs' evidence supports a finding that the settlement amounts here are reasonable and fair, particularly in light of the expense and risks of continuing litigation. Accordingly, I respectfully recommend that the settlement be approved.

Allied and Minelli have also reported that they settled their cross-claims against one another. As Judge Garaufis noted, the settlement between Allied and Minelli does not require judicial approval. However, Allied put $75,000 in escrow that may not be released without my approval. Minelli now seeks to have those funds released. By Order referring the motion, Judge Garaufis directed that no consent to release the funds be given until a final determination has been made regarding settlement between plaintiffs and Allied. By letter dated July 18, 2011, Minelli appears to ask that I disregard Judge Garaufis's Order, and release the funds immediately. I have no authority to overrule Judge Garaufis's sound decision to leave the Allied funds in escrow until the fairness of the FLSA settlement is decided. Therefore, I reserve decision on whether to release the funds until final approval of the FLSA settlement. When it is approved, I will promptly issue an order releasing the funds.

## **CONCLUSION**

For the foregoing, I respectfully recommend that settlement of plaintiffs FLSA claims be approved by the Court.

Any objections to this Report and Recommendation must be filed with Clerk of the Court and Judge Garaufis within fourteen days of receiving this Report and Recommendation. Failure to file timely objections may waive the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: August 1, 2011
      Brooklyn, New York

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**